SCOTT BROWN (PRO SE)            ATTACHMENT 1

V.            CIVIL ACTION

NO._____

ACTION FOR BOSTON COMMUNITY DEVELOPMENT

## Parties

1. The plaintiff Scott Brown is a resident of 34 Alban Street, Dorchester, MA 02124 (formerly 28 Bower Street, Medford, MA 02155) and a citizen of the United States.
2. The defendant Action for Boston Community Development is located at 178 Tremont Street, Boston, Massachusetts 02111.

## Jurisdiction

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. SS 1332. The U.S. Equal Employment Opportunity Commission in their Dismissal and Notice of Rights stated that I may file a lawsuit against ABCD under federal law based on this charge in federal or state court.

## Facts

4. As an African-American male, I was a target of disparate treatment from ABCD when my supervisor secretly reorganized the support staff at "The School" while I was still employed, terminated the employment of the entire support staff, misled us about the circumstances, retained the employment of one support staff employee and did not

consider me for any of the newly created positions while fully aware of my qualifications and interest in continued employment.

5. On Wednesday May 23, 2012 me and three of my coworkers (Byron Godfrey/Black Male), (Raymond Porch/Black Male), (Jessica DeVault/White Female) were informed by our supervisor (Melissa Malone Sanjeh/White Female) that our employment at ABCD's The School would be terminated as of June 29, 2012. At the time, we were informed there was insufficient funding to continue our employment.

6. Byron Godfrey (Intake/Assessment Specialist), Jessica DeVault (Job Developer/Case Manager) and I (Case Manager/Job Developer I) were each technically Case Managers but were called "Counselors" at The School and were equal parts of The School's "Counseling Team". We had shared, overlapping responsibilities at The School, met regularly to discuss business of The School, had equal say in all matters of The School and all reported to Melissa Malone Sanjeh. Raymond Porch was The School's Math and Science Remediation Coordinator.

7. Each of us, in that meeting, inquired about this sudden loss of funding. We were told we'd be informed of the specifics of the funding issue at a later date which never happened. Each of us, in that meeting, asked to be considered for any newly created positions at The School. Melissa Malone Sanjeh promised she would but never did.

8. ABCD decided at some point in June 2012 (prior to our termination date) to retain Jessica DeVault's employment with the School. There was no official notification as to the decision.

9. During the summer of 2012, ABCD created two new positions (School Operations Manager, School Adjustment Counselor/Case Manager) at The School. Byron Godfrey and I believed we were qualified to perform either of the two new positions and expected to be contacted for interviews. When the academic year started in September without us being contacted and without the positions being filled, we filed discrimination complaints September 18, 2012 with the Massachusetts Commission Against Discrimination (MCAD) (Docket Number: 12BEM02384). I worked at The School for ten years and Byron Godfrey for almost twelve years. Melissa Malone Sanjeh knew

of our capabilities and our interest but did not consider us for either of the new positions.

10. ABCD responded to our discrimination complaint November 5, 2012 claiming my termination was a result of being forced to suddenly reorganize The School staff due to significant funding loss and strict, new requirements imposed on The School by its two main funders – Boston Public Schools (BPS) and the Mayor's Office of Jobs and Community Services (JCS). ABCD produced no itemized funding contracts or any documentation that detailed such losses in the School's grant funding and its impact on staffing. ABCD produced no evidence that proved my position needed to be terminated and that the School staff needed to be reorganized. ABCD submitted no evidence of strict, new requirements imposed on the School by its funders that I was unable to meet. I produced evidence that sufficiently challenged ABCD's claim of budgetary pressures and timeline of documents submitted that required an immediate staffing reorganization.

11. ABCD also made numerous false claims through their attorneys to discredit my testimony, job performance, impact and ability. ABCD claimed I had a limited role at The School consisting of only job counseling and case management; I did not perform to their satisfaction – especially since 2011 – and had numerous disciplinary issues. I produced evidence to prove each claim to be false.

12. ABCD claimed that I am not qualified to meet the new funding requirements or to fill any of the newly created positions at The School. ABCD submitted several random documents claiming evidence that I am unqualified to work for The School. None of the documents submitted are reflective of my ability to work for The School or my ability to meet supposed new requirements.

13. ABCD attempted to address only the newly created School Adjustment Counselor/Case Manager position as it referred to me because I have a Bachelor's Degree and the new position required a "clinical background". The School Operations Manager position (graded highest of the School's support positions) required no clinical experience.

14. ABCD's original hire (Natasha Mignott) for the School Operations Manager position was no more qualified than I for the position. Ms. Mignott lasted less than four months on the job.
15. ABCD claimed I had a position distinctly different and inferior to the position Jessica DeVault was hired to perform, that The School's counseling team with three equal members did not exist and that I am no longer qualified to work at The School. I produced evidence to prove each of their claims to be false.
16. ABCD claimed Jessica DeVault was hired as The School's first-ever Guidance Counselor in August 2011 and was never a Case Manager. ABCD produced no evidence to prove this claim. Conversely, Jessica DeVault rebuts this claim in an email conversation I had with her November 20, 2013 where she confirms she requested a title change after accepting the position. In addition, I proved Boston Public Schools did not require The School to employ a licensed Guidance Counselor and that The School's Academic Guidance Counselor/Case Manager position does not meet the criteria for an actual Guidance Counselor in the state of Massachusetts.
17. I proved Jessica DeVault was hired to fill an open Case Manager position on The School's Counseling Team in August 2011 after working for ABCD's SummerWorks employment program as a temporary employee (Youth Service Specialist) and was never officially notified – even after making her request – that her position title had been changed to Guidance Counselor.
18. ABCD claims Jessica DeVault provided mental health counseling that I was unable to provide as the major component of her job. I proved the counseling detailed in the Academic Guidance Counselor/Case Manager job description is identical to the counseling required in my Case Manager/Job Developer I job description ("Provide educational and personal counseling to participants in order to establish educational and occupational goals..."). If that had been the position Jessica DeVault was hired to do, the student counseling expectations still did not differ from those I was expected to provide.

19. I was treated differently than Jessica DeVault who received unjustifiably preferential treatment. I proved I was similarly situated with Jessica DeVault considering the jobs we were hired to do and the type of work we were required to perform at The School.
20. Jessica DeVault does claim to have earned an advanced degree in counseling that I do not have but I have a 15-year work history of counseling students in Boston Public High Schools that Jessica DeVault does not possess. Jessica's position at The School was her first-ever full-time position working with students.
21. ABCD produced no evidence they ever communicated that I needed to pursue a Master's degree or obtain specific counseling experience they felt I lacked in order to maintain my employment with The School. Apparently, ABCD informed Byron Godfrey they wanted him to pursue a Bachelor's degree. That information was used against him in the complaint process.
22. ABCD claimed that beginning in fiscal year 2013, The School was required to serve a larger population of at-risk students and to improve measureable outcomes. As a result, The School decided to shift away from its counseling focus on post-graduation job placement and move towards providing more holistic counseling, including mental health services that supported college placement. ABCD submitted no proof that Boston Public Schools expected the School to immediately service a larger population of at-risk students including many students who suffer from severe mental health issues and/or struggle with learning and cognitive disabilities. ABCD submitted no proof that Boston Public Schools suddenly expected The School to provide holistic counseling that includes mental health services not previously provided.
23. ABCD claimed I am not qualified to support students who wish to attend college, rather than immediately enter the workforce, after graduation. I proved The School's goal was never one of tracking graduates into post-graduation job placement at the expense of post-graduation college acceptance and other opportunities. The goal was always employment, education, training or a combination of those outcomes and I was more than capable of supporting students college bound students.

24. I proved the student population at The School always consisted primarily of at-risk students and many with diagnosed or undiagnosed learning disabilities by referencing the Workforce Investment Act (WIA) RFP. According to the WIA RFP (pages 4 and 5) the School is required to service students with significant barriers to education including the following: "out-of-school youth; non-native-English speakers, defined as high school dropouts as well as those who may have secondary credentials but are in need of additional assistance to secure education, training, or employment; in-school youth at risk of dropping out, including those who are two or more years behind in obtaining credits required for high school graduation; young men between the ages of 18 and 21, particularly young men of color; court-involved youth; youth residing in Boston Housing Authority (BHA) facilities; and young people in the care of the Department of Children and Families (DCF)". Most program participants came from low-income families which is a WIA Title I Youth eligibility requirement. All demonstrated one or more of the following eligibility characteristics: "deficient in basic academic skills (8.9 grade level or below grade in reading or math); school dropout; a homeless, runaway, or foster child; pregnant or parenting; an offender; a youth requiring additional assistance to complete and educational program, or to hold employment".

25. The School added several new support staff positions (a first-ever Lead Teacher, a first-ever Online And Out Of School Learning Instructor, a first-ever Special Education Teacher, an entirely new staff of Teachers and a first-ever Academic Guidance Counselor/Case Manager after Jessica DeVault's resignation from her Case Manager position) less than one year after our terminations demonstrating the availability of funding to fill staffing needs. An advanced degree is not a requirement to perform any of the positions at The School.

26. Prior to June 2012, The School's support staff always consisted of both men and women. More than 1 ½ years from the date of my complaint, Melissa Malone Sanjeh had hired no men for any of the School support positions demonstrating a clear gender bias in her hiring practices.

27. MCAD, in their September 29, 2014 dismissal, determined they were unable to conclude that the information obtained establishes a violation of the statutes. In MCAD's Investigative Disposition, many of ABCD's false claims were accepted as fact despite being proved inaccurate.
28. I filed an appeal with MCAD Enforcement Advisor Lila Roberts, Esq. March 6, 2015. The appeal decision supported MCAD's original determination and did not address the obvious inconsistencies in ABCD's testimony that factored heavily into their defense.
29. The EEOC (Number: 16C-2012-02438) adopted MCAD's findings and mailed the Dismissal and Notice of Rights at the end of August.
30. I am no clearer on what is and what is not discrimination based on MCAD and EEOC's determination. If ABCD did not discriminate against me, there should be no reason for them to mislead and misrepresent the facts to defend their actions. I cannot understand how ABCD can make as many damaging and unsubstantiated claims under penalty of perjury as they did to protect their positions, have every critical element of their defense proved false and it not be clearly seen as context for discrimination. I am hoping Your Honor provides me with the clarification and assistance I have been seeking throughout this process.

### Relief

ABCD should be made to compensate me fully for any loss of salary since my termination (June 2012), damages to my personal and professional reputation and any fees or penalties the Court deems appropriate.

Scott Brown   34 Alban Street Dorchester, MA 02124   857-383-0831